

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00900-CV

**IN THE INTEREST OF L.C.** and N.M., Children

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-03030
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:     Marialyn Barnard, Justice
     Patricia O. Alvarez, Justice
     Luz Elena D. Chapa, Justice

Delivered and Filed:  June 17, 2015

AFFIRMED

Appellant F.C. appeals the trial court's order terminating her parental rights to her children L.C. and N.M.  Appellant J.M. appeals the same order terminating his parental rights to his child N.M.  Each parent asserts the evidence is neither legally nor factually sufficient for the trial court to have found by clear and convincing evidence that terminating their parental rights was in their respective children's or child's best interests.  We conclude the evidence is both legally and factually sufficient to support the trial court's order.

## BACKGROUND

F.C. is the mother of L.C.[1] and N.M. N.M.'s father is J.M. J.M. and F.C. lived together, with the two children, in the upstairs portion of P.C.'s home. P.C. is F.C.'s mother and the children's grandmother.

In December 2013, when P.C. went upstairs and saw the children's living conditions and a box containing drugs and drug paraphernalia, P.C. reported her concerns to the Department of Family and Protective Services. The Department petitioned for temporary conservatorship of the children—which the trial court granted—and the children continued to live with P.C. and her fiancé in their home, but F.C. and J.M. moved out.

After a hearing, the trial court appointed the Department as Temporary Managing Conservator of the children and ordered F.C. and J.M. to comply with their service plans. The Department began family service plans for both F.C. and J.M., which they each signed. In F.C.'s service plan, the caseworker noted F.C.'s poor health: she had eight teeth removed due to infection in her teeth and gums, she has a heart condition that requires surgical intervention, but the surgery is being delayed because F.C. is pregnant. In April 2014, P.C. found F.C. and J.M. in a place the Department identified as "a known drug house." F.C. was extremely underweight and had needle marks on her skin. P.C. took F.C. to a hospital, but when P.C. went back the next day to check on her, F.C. was gone.

P.C. discovered F.C. and J.M. had abruptly moved to Pennsylvania to be with J.M.'s parents. J.M. texted P.C. with a brief message: "I apologize for it all. We as drug addicts do a lot of [bad things]."

---

[1] L.C.'s presumed father is D.F. D.F. did not appeal the order terminating his parental rights to L.C.

At the two day bench trial, F.C. and J.M. were represented by court-appointed counsel and each parent testified by telephone. The trial court terminated J.M.'s and F.C.'s parental rights, and each appealed. Each appellant asserts the evidence is neither legally nor factually sufficient to support the trial court's order.

## STANDARDS OF REVIEW

If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that (1) the parent committed one of the grounds for involuntary termination listed in section 161.001(1) of the Family Code, and (2) terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002).

### A. Legal Sufficiency

When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

### B. Factual Sufficiency

Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved

that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

## BASES FOR TERMINATION

### A. Courses of Parental Conduct

The trial court found by clear and convincing evidence that F.C.'s conduct was grounds for termination under subparagraphs (D), (E), (N), (O), and (P) of section 161.001(1). *See* TEX. FAM. CODE ANN. § 161.001(1). The trial court found J.M.'s conduct met each of the same grounds. *See id.* On appeal, neither parent argues the evidence is insufficient for the trial court to have found their respective courses of conduct meet the specified statutory grounds.

### B. Best Interest of the Child

Instead, each parent challenges the sufficiency of the evidence that terminating their parental rights is in the children's best interests. We briefly review the law pertaining to determining the best interest of the child. The factors a court uses to ascertain the best interest of the child may include the following:

> (B) the emotional and physical needs of the child now and in the future;
> (C) the emotional and physical danger to the child now and in the future;
> (D) the parental abilities of the individuals seeking custody;
> . . .
> (G) the stability of the home or proposed placement;
> (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
> (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).

Applying each standard of review, we examine the evidence pertaining to the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(2); *In re E.N.C.*, 384 S.W.3d at 807; *In re J.F.C.*, 96 S.W.3d at 284.

**EVIDENCE OF BEST INTERESTS OF THE CHILDREN**

At trial, the parties presented several witnesses and the court admitted photographs of the upstairs of P.C.'s home.  We begin with the photographs.

**A.      Photographs**

The Department examined P.C. regarding some photographs she took.  P.C. explained that although F.C., J.M., and the children lived upstairs in her home, she did not go upstairs to check on them until December 9, 2013.  When she did, she took photographs of the areas in which F.C., J.M., and the children were living.  The photographs show many clothes in mounds and others strewn across the room with the areas in general disarray.  Several other photographs show a small box—and its contents—that was found in the bedroom.

The box contained three plastic syringes with hypodermic needles attached; some Suboxone packets; three small round yellow pills with an "M" on one side; two empty quarter-sized, press-to-seal, clear plastic bags; and a metal spoon.  The end of the spoon's handle was wrapped several times around with black tape, and the underside of the spoon's bowl was completely blackened.

**B.      P.C.'s Testimony**

P.C. also testified to the following facts.

*1.      Parents' Drug Abuse*

When P.C. discovered F.C.'s and J.M.'s drug use, she searched the house.  Besides the other drug paraphernalia, she found "Brillo pads, cotton swabs, and needle caps" and "an open needle on top of the closet in the bedroom."  The drug paraphernalia from the box were within the children's reach.  When P.C. asked F.C. and J.M. why the drugs were left out in the open, J.M. said "I'm an addict."

J.M. told her that his drug use began in 2008 and since then he has used alcohol, Ritalin, cocaine, synthetic cocaine, methamphetamines, and methadone. He has repeatedly admitted to P.C. that he is a drug addict.

F.C. also had a history of drug abuse and had been in a drug rehabilitation program. In April 2014, when she pulled F.C. out of a drug house, F.C. was extremely underweight and had needle marks on her; "[s]he actually looked half dead." She took F.C. to the "Restitution Center," but they would not keep F.C. because she had a heart condition and she was pregnant.

> 2.    *Children's Well-Being*

P.C. assured the court that the children are safe and happy in her home, and they are developing normally. They are bonded to her and she loves them. She takes good care of them, and if the parents' rights are terminated, she and her fiancé want to adopt the children.

## C.    F.C.'s Testimony

F.C. testified briefly by telephone from Pennsylvania. She has completed one parenting class, a drug evaluation, and she has been attending both Alcoholics Anonymous and Narcotics Anonymous meetings about three times per week. She is not working because of her heart condition, but she maintains contact with her children by telephone and video conference.

## D.    J.M.'s Testimony

J.M. also testified by telephone from Pennsylvania. He admitted he has a history of drug and alcohol abuse. Initially he testified that he had a DUI in 2008, he entered a rehabilitation program, but "other than that" he had no drug abuse history. He knew F.C. had a drug abuse problem, that she had been admitted to a hospital for intravenous drug abuse, but insisted he never left his child alone with F.C. He did not know who the drug paraphernalia belonged to, but admitted it was dangerous to the children for the paraphernalia to be left in the room where the children were living.

On cross-examination he admitted his drug abuse history also included heroin and methamphetamines. He acknowledged that from the time his service plan began, he has not made any child support payments until he began work in Pennsylvania, about six weeks before trial. As of the date of trial, he had made two or three weekly child support payments. He loves N.M., and he calls or video chats with N.M. four or five times each week. He completed one parenting class and is receiving drug and alcohol abuse treatment services in Pennsylvania.

### E.    Previous Caseworker's Testimony

Rosemary Flores, the parents' Department caseworker from December 2013 to April 2014, testified to the following.

When she observed F.C.'s interaction with her children as they visited her in the hospital, F.C.'s actions were appropriate and there was an emotional bond between F.C. and the children. But F.C. repeatedly missed drug tests until she was tested on April 21, 2014. On that date, on the only drug test they took, F.C. and J.M. tested positive for opiates. F.C. and J.M. admitted they were addicted to drugs and both asked for help. Both parents started in the drug court program, but they were not accepted.

J.M. admitted he had a long history of drug abuse and it began when he was a teenager. He admitted stealing from his neighbor's house to support his drug use. He admitted repeated relapses and asked for her (Flores's) help. But when she made appointments for J.M., "he constantly would be a no show."

### F.    Current Caseworker's Testimony

April Muzquiz, another Department caseworker, testified to the following. She received the case in April 2014 and she is the current caseworker.

*1.    Parents' Plan Compliance*

She received a parenting class completion certificate from F.C. in October 2014, but she has not received any other completion information from F.C. on her drug assessment or attending individual counseling.  F.C. has failed to provide proof that she can provide for the children.  F.C. completed a urinalysis in July 2014 that was negative.

J.M. completed a parenting class but has not completed drug treatment, individual counseling, empowerment class, or random drug tests.

*2.    Placement Home*

The grandparents (P.C. and her fiancé) provide a safe home and have a healthy relationship with the children.  The children are thriving in their care.  It would be detrimental to the children to remove them from their grandparents' care.

She believes it is in the children's best interests that the court terminate F.C.'s and J.M.'s parental rights.

## F.C.'s PARENTAL RIGHTS

The trial court saw the photographs and heard the witness testimony that F.C. had a multi-year history of drug abuse, a serious heart condition, and was not working because of her health.  It could have believed that F.C. used the drug paraphernalia to inject herself with drugs and inferred that she did so while caring for her four year old and eighteen-month old children.  *See Holley*, 544 S.W.2d at 372 (factors (C), (D), (H)).  It could have believed she left the needles and drugs within the reach of her children in the past, and if she regained conservatorship of her children and again relapsed into drug abuse, her conduct would endanger the children in the future.  *See id.* (factors (C), (D), (H)).  The court could have reasoned that because F.C. continued to abuse drugs while she was pregnant and while her children had been removed from her because of her drug abuse, she would continue to put their physical health and emotional development in danger.  *See*

*id.* (factors (C), (D), (H), (I)).  Finally, the court could also have believed the testimony that P.C. and her fiancé want to adopt the children; the children are bonded to them; they are providing a safe, stable environment for the children; and the children's present and future physical health and emotional development would be best protected in their home.  *See id.* (factors (B), (G)).

Reviewing the evidence under the two standards, we conclude that the trial court could have formed a firm belief or conviction that terminating F.C.'s parental rights to L.C. and N.M. was in the children's best interests.  *See In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 27.  Therefore, we conclude the evidence is legally and factually sufficient to support the trial court's order with respect to F.C.  *See In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 27.

## J.M.'S PARENTAL RIGHTS

The trial court also considered the photographs and heard the witness testimony regarding J.M.  It could have disbelieved J.M.'s testimony that he had only a very limited history of drug abuse.  Instead, it could have believed others' testimony that J.M. began using drugs as a teenager; he used a wide variety of drugs including alcohol, heroin, methamphetamines, cocaine, synthetic cocaine, and methadone; and despite previous services, he continues to relapse into drug abuse. *See Holley*, 544 S.W.2d at 372 (factors (C), (D), (H)).  It could have believed that J.M. used the drug paraphernalia to inject himself with drugs and inferred that he did so while caring for the children.  *See id.* (factors (C), (D), (H)).  It could have believed he left the needles and drugs within the reach of the children in the past, and if he regained conservatorship of his child and again relapsed into drug abuse, his conduct would endanger N.M. in the future.  *See id.* (factors (C), (D), (H)).  The court could have reasoned that because J.M. continued to abuse drugs while N.M. had been removed from him because of J.M.'s drug abuse, he would continue to put N.M.'s physical health and emotional development in danger.  *See id.* (factors (C), (D), (H), (I)).  Finally, the court could also have believed the testimony that P.C. and her fiancé want to adopt N.M., N.M. is bonded

to them, they are providing a safe, stable environment for N.M., and N.M.'s present and future physical health and emotional development would be best protected in their home. *See id.* (factors (B), (G)).

Reviewing the evidence under the two standards, we conclude the trial court could have formed a firm belief or conviction that terminating J.M.'s parental rights to N.M. was in N.M.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 27. Therefore, we conclude the evidence is legally and factually sufficient to support the trial court's order with respect to J.M. *See In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 27.

## CONCLUSION

F.C. and J.M. do not challenge the trial court's findings that their respective courses of conduct comprise multiple bases to terminate their parental rights. Instead, they argue the evidence is neither legally nor factually sufficient to support the trial court's finding by clear and convincing evidence that terminating their respective parental rights was in the children's best interests.

Having examined the evidence under the applicable standards of review, we conclude the evidence pertaining to the trial court's findings with respect to F.C. and J.M. is both legally and factually sufficient. Therefore, we affirm the trial court's order.

Patricia O. Alvarez, Justice